IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

TABBIE HAZZARD                                                                                      PLAINTIFF

V.                                                                          CAUSE NO.: 1:10CV251-SA-DAS

EXPRESS SERVICES, INC.;
NAVISTAR DEFENSE, LLC;
and GRIFFIN WEST POINT, LLC                                                                 DEFENDANTS

MEMORANDUM OPINION

Plaintiff Tabbie Hazzard filed suit against Express Services, Inc., and Navistar Defense, LLC, claiming she was terminated on the basis of her gender in violation of Title VII. Express and Navistar filed motions for summary judgment [65, 63]. Plaintiff thereafter amended her complaint adding Griffin West Point, LLC, as a defendant. Griffin filed a Motion to Dismiss [84]. Because Plaintiff failed to exhaust her administrative remedies timely, Griffin's Motion to Dismiss is granted. Express and Navistar's motions for summary judgment are also granted as Plaintiff has failed to raise a genuine dispute of material fact that she was discriminated against because she was a female.

*Factual and Procedural Background*

Navistar is a national defense contractor that leases a facility in West Point, Mississippi, to manufacture vehicles and parts designed by Navistar. Navistar contracted with Griffin, an armoring company, to manage day-to-day operations at the West Point facility. Express Services was engaged to provide some of the workforce necessary to meet Navistar's production needs. Persons employed at the West Point facility included Express, Navistar, and Griffin employees.

Tabbie Hazzard was initially hired in March of 2006 as an expediter and later as a contract purchasing agent at the West Point facility. Initially, Hazzard was employed by Randstad, the

predecessor to Express. As of January 22, 2007, Hazzard received her paychecks, paid vacation, and health insurance through Express Services.

As a purchasing agent, Hazzard was responsible for procuring the maintenance, repair, and operations (MRO) supplies that were used to operate the facility. In the Spring of 2008, Griffin began purchasing MRO supplies through an outside vendor – Precision Industries. According to Peter Chapman, the materials manager, the switch to Precision Industries dramatically simplified the procurement of MRO supplies. Because of this move to a single third party purchaser, some of Hazzard's job responsibilities vanished. The remainder of her duties was shifted to Brad Johnson, a purchasing manager employed by Griffin, when Chapman decided in September of 2009 to lay off Tabbie Hazzard. According to Brad Johnson, when reviewing potential employees to lay off, Chapman stated that Hazzard was a "bitch." Chapman further stated to Johnson that he could not get along with her, they had several run-ins, and "butted heads." Hazzard was laid off on September 24, 2009. She received unemployment benefits from Express for a number of months.

Hazzard filed a Charge of Discrimination against Express and Navistar on November 30, 2009. She received her right-to-sue letter on July 21, 2010, and instituted this suit. Plaintiff originally alleged she was terminated because Express Human Resources Manager, Michelle Galloway, was jealous of the attention their male colleagues paid to Hazzard. Hazzard particularly alleges that Galloway began making baseless allegations about Hazzard having affairs "simply because Plaintiff was female."

During discovery, Plaintiff took the deposition of Peter Chapman on August 25, 2011, in which he stated that during the relevant time period, he was employed by Griffin. Navistar's

counsel thereafter sent Plaintiff's counsel a letter indicating that Griffin was Plaintiff's employer during her time at the West Point facility.

Navistar and Express both filed motions for summary judgment, each indicating that they were not Plaintiff's "employer" pursuant to Title VII, or alternatively, that Plaintiff failed to allege a genuine dispute of material fact that Hazzard was terminated because she was female.

Hazzard filed a Charge of Discrimination on the basis of sex against Griffin West Point, LLC, on November 2, 2011. The EEOC dismissed that charge and closed its file on November 7, on the basis that Hazzard's charge was untimely. Plaintiff amended her complaint, added Griffin as a defendant, and claimed that the time for filing the charge against that entity should be equitably tolled. Griffin filed a Motion to Dismiss on the basis of Plaintiff's failure to exhaust administrative remedies.

*Motion to Dismiss Standard and Analysis*

In evaluating a Rule 12(b)(6) motion to dismiss, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). To survive a defendant's motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim has the requisite facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Although a complaint need not contain detailed factual allegations, the "[f]actual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true." Id. A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the complaint and are central to the claims. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 499 (5th Cir. 2000). Further, a court may refer to matters of public record when deciding a motion to dismiss. Chauhan v. Formosa Plastics Corp., 212 F.3d 595, 595 (5th Cir. 2000). Rule 12(b)(6) forms a proper basis for dismissal for failure to exhaust administrative remedies. Martin K. Eby Constr. Co., 369 F.3d at 467 n.4.

Employment discrimination plaintiffs must exhaust their administrative remedies before pursuing claims in federal court. Taylor v. Books a Million, Inc., 296 F.3d 376, 379 (5th Cir. 2002). A plaintiff must "file a charge of discrimination with the EEOC within one hundred and eighty days after the alleged unlawful employment practice occurred." Floyd v. Amite County Sch. Dist., 581 F.3d 244, 248 (5th Cir. 2009) (punctuation omitted); see also 42 U.S.C. § 2000e-5(e)(1). "The period begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred." Vadie v. Miss. State Univ., 218 F.3d 365, 371 (5th Cir. 2000). Exhaustion under Title VII requires filing a timely charge of discrimination with the EEOC and receipt of a "right-to-sue" letter. 42 U.S.C. § 2000e-5 (e) and (f); see also Taylor, 296 F.3d at 379.

Although equitable tolling can extend the filing period, it is a doctrine "to be applied sparingly" and with the plaintiff shouldering the burden of proof. Granger v. Aaron's, Inc., 636 F.3d 708, 712 (5th Cir. 2011) (quotation marks and citations omitted); see also Harris v. Boyd Tunica, Inc., 628 F.3d 237, 239 (5th Cir. 2010) (noting that "equitable tolling applies only in rare and exceptional circumstances."). Indeed, "[p]rocedural requirements established by Congress

4

for gaining access to federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 152, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984). The Fifth Circuit has identified three potential bases for equitable tolling, including "(1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights." Granger, 636 F.3d at 712 (citation omitted); Manning v. Chevron Chem. Co., 332 F.3d 874, 880 (5th Cir. 2003). None of those grounds are present here.

The facts of this case do not rise to the level of "exceptional circumstances" justifying the application of equitable tolling. Plaintiff has provided no explanation as to why she was unable to ascertain who her employer was prior to filing her charge. She alleges no wrongdoing on the part of Navistar, Express, or Griffin, in hiding the identity of Griffin as her employer. It appears to the Court that Plaintiff failed to exercise the appropriate diligence in determining what party would be considered her "employer" pursuant to Title VII. A plaintiff "who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." Baldwin Cnty., 466 U.S. at 151, 104 S. Ct. 1723. Thus, the time for filing her EEOC charge against Griffin is not properly tolled and was untimely. Griffin's Motion to Dismiss [84] is granted as Plaintiff failed to file a Charge of Discrimination with the EEOC against Griffin within the statutory time period.

*Summary Judgment Standard and Analysis*

Summary judgment should be granted when the evidence shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of material fact exists where a jury could reasonably find

5

for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). When ruling on a motion for summary judgment, the court must construe the facts and evidence in the light most favorable to the nonmoving party. Ford, Bacon & Davis, LLC v. Travelers Ins. Co., 635 F.3d 734, 736 (5th Cir. 2011) (citing Holt v. State Farm Fire & Cas. Co., 627 F.3d 188, 191 (5th Cir. 2010)).

Once the party seeking summary judgment meets its burden, the nonmoving party must "come forward with specific facts showing a genuine factual issue for trial." Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist., 635 F.3d 685, 690 (5th Cir. 2011). The nonmoving party cannot rely on metaphysical doubt, conclusive allegations, or unsubstantiated assertions but instead must show that there is an actual controversy warranting trial. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). Both Express and Navistar have moved for summary judgment on Hazzard's Title VII claim on the grounds that it was not her "employer" under that statute.

In determining whether a given defendant is an employer, the Fifth Circuit has approved the standards laid out in Deal v. State Farm County Mutual Insurance Co. of Texas, 5 F.3d 117 (5th Cir. 1993), and summarized in Muhammed v. Dallas County Community Supervision and Corrections Dep't:

> Determining whether a defendant is an "employer" under Title VII involves a two-step process. First, the court must determine whether the defendant falls within Title VII's statutory definition of an "employer." Title VII defines an "employer" as "a person engaged in an industry affecting

6

> commerce who has fifteen or more employees . . . and any agent of such a person . . . ." If the defendant meets this definition, the court must then analyze whether an employment relationship exists between the plaintiff and the defendant.
>
> To determine whether an employment relationship exists within the meaning of Title VII, we apply a hybrid economic realities/common law control test. The most important component of this test is the right to control the employee's conduct. When examining the control component, we have focused on whether the alleged employer has the right to hire, fire, supervise, and set the work schedule of the employee. . . . The economic realities component of the test focuses on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.

479 F.3d 377, 380 (5th Cir. 2007) (footnotes and internal quotation marks omitted). There is no indication from the record that Navistar and Express do not satisfy the statutory definition of "employer." Thus, the Court must analyze the economic realities/common law control test to determine which entity, if either, was Hazzard's employer for purposes of Title VII liability.

The Fifth Circuit recently confronted the issue presented here – whether plaintiff is an employee of the staffing company or the contracting company. In <u>Johnson v. Manpower Professional Services, Inc.</u>, 442 F. App'x 977, 980 (5th Cir. 2011), the plaintiff obtained his position as a contract recruiter for Air Liquide through a staffing company, Manpower Professional Services. Pursuant to the staffing arrangement between Air Liquide and Manpower, the staffing company provided employees to the contracting company when it had need of employees. 442 F. App'x at 979. Indeed, the staffing company in <u>Johnson</u> handled the administrative and payroll issues, while Air Liquide decided which recruits to hire and then managed and supervised them once hired. <u>Id.</u> While Manpower was technically in charge of hiring and firing, it did so only at Air Liquide's approval or request as to those actions. Moreover, the court noted that the plaintiff's Manpower supervisor merely responded to the requests of his

Air Liquide supervisors, and that plaintiff's job performance was reviewed by Air Liquide.

After analyzing the economic realities test, the Fifth Circuit noted:

> [A]lmost all the factors under the economic realities test point to Manpower being Johnson's employer, as Manpower paid Johnson and withheld taxes on his behalf. Nonetheless, because the majority of the more important right to control factors point to Air Liquide as Johnson's employer, we conclude that Air Liquide and not Manpower is Johnson's employer for the purposes of his overtime denial claim.

Id. at 982.

Here, the staffing arrangement is similar to the situation in Johnson. Hazzard received her paychecks, benefits and health insurance from Express. Her work was supervised and directed by a number of individuals from the three different firms. She identified Dewel Brasher, a Griffin employee as her supervisor. Hazzard contends that Dave Creasap, a Navistar employee, was responsible for obtaining pay raises for her. Moreover, Sean Tanner, a Navistar employee, was present when Plaintiff was terminated. Peter Chapman, the ultimate decision maker as to Plaintiff's termination, identified himself as a Griffin employee; however, his email address during the pertinent time period was assigned an @navistar.com domain. A review of the record thus shows that Plaintiff was supervised and directed by persons not associated with the staffing company. Based on the case law cited above and the economic realities/common law control test, Express Services, Inc., was not Plaintiff's employer. Therefore, Express' Motion for Summary Judgment [65] is granted.

There is a question of fact as to which entity "employed" Plaintiff - Navistar or Griffin. However, because Plaintiff cannot overcome her burden to prove that her termination was caused or motivated by her gender, the Court finds that Navistar's Motion for Summary Judgment [63] should be granted as well.

In order to survive summary judgment on a claim of employment discrimination based on circumstantial evidence, the plaintiff must first establish a prima facie case of intentional discrimination. Bryan v. McKinsey & Co., 375 F.3d 358, 360 (5th Cir. 2004) (citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). The burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). If the employer satisfies its burden, the plaintiff must then show that either "(1) the employer's reason is pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." Burrell v. Dr. Pepper/Seven Up Bottling Grp., 482 F.3d 408, 411-12 (5th Cir. 2007).

To establish a claim for employment discrimination, the plaintiff must show that she (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside of the protected class, or in the case of disparate treatment, show that other similarly situated employees were treated more favorably. Bryan, 375 F.3d at 360; see also Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999).

Navistar contends that Plaintiff was not qualified for the position in that she had no supervisory experience and that she was not replaced because her position was subsumed by the purchasing manager. There is no dispute that Plaintiff's job responsibilities were taken over by a male. Brad Johnson testified that he joined Griffin to run the purchasing department and occasionally help with the expediting department; however, after the layoffs in September of 2009,

he was basically running both departments. Chapman acknowledged that with the layoffs, the responsibilities for the material expediters would be combined with other procurement responsibilities. When asked, Chapman contended that Hazzard would not have been able to handle those duties because her experience in the realm of purchasing was not as significant as Johnson's. Chapman further indicated Johnson was a better pick because he had to "ensure that [Navistar] was making good purchase decisions." At the time Hazzard was terminated, Chapman also ended the employment of at least five others, both male and female, in the purchasing department. Indeed, the record reflects that several stages of layoffs occurred in 2009, resulting in approximately two hundred fifty employees being laid off during that year.

Hazzard completed her GED and at least one computer course at East Mississippi Community College. She has no certifications or specialized training in procurement. She claims thirteen years of experience in the purchasing area, but acknowledges that not all of her prior positions were supervisory in nature. Hazzard was earlier employed at Navistar as an expediter but was moved into the MRO purchasing position in 2008. Brad Johnson joined Griffin in the spring of 2009. He has a bachelor's degree from Mississippi State University, is a member of the American Production Inventory Control Society (APICS), and is certified in lean management.

Chapman testified that he picked Hazzard for layoff because the position available did not fall into her realm of experience and she was unwilling to accept other duties and a wider scope of work. Chapman noted that the switch to a third party outsourcer of MRO supplies "dramatically simplified the procurement of MRO supplies," and that because Johnson was APICS certified,[1]

---

[1] Chapman noted that APICS certification is a "general acknowledgment of competency in the realm of purchasing and inventory."

with a wealth of purchasing experience, Hazzard was the lesser qualified of the two individuals.

Even assuming Plaintiff satisfied the initial prima facie inquiry, however, Hazzard is unable to show a genuine dispute of material fact that she was terminated because of her gender or that her gender motivated her termination.

Navistar contends that the layoffs of 2009 were necessary because the defense firm did not receive a large contract it anticipated. Therefore, the substantial decrease in production at the West Point facility caused over two hundred fifty persons to be laid off during 2009. Hazzard was one of those individuals. Defendant has satisfied its burden of producing a legitimate, non-discriminatory reason for Plaintiff's termination. See Parker v. State of La. Dep't of Educ. Special Sch. Dist., 323 F. App'x 321, 327 (5th Cir. 2009).

If the defendant can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory, then the inference of discrimination created by the plaintiff's prima facie case disappears, and the factfinder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511-12, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). The plaintiff must present substantial evidence that the employer's proffered reason is a pretext for discrimination. Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003). To show pretext on summary judgment, "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).

Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Laxton, 333 F.3d at 578 (quoting Reeves, 530 U.S. at 143, 120 S. Ct. 2097). In contrast, the Fifth Circuit has modified

the McDonnell Douglas formulation to permit proof that discrimination was one motivating factor among others for an adverse employment action. See generally Rachid v. Jack in the Box, Inc., 376 F.3d 305 (5th Cir. 2004).

Plaintiff contends that Brad Johnson's recollection that Peter Chapman stated that Hazzard was a "bitch" when discussing who to lay off is sufficient to show that her termination was motivated, at least in part, by her gender. Plaintiff contends this sexual stereotyping constitutes evidence of sex discrimination. However, "[r]emarks at work that are based on sex-stereotypes do not inevitably prove that gender played a part in a particular employment decision. The plaintiff must show that the employer actually relied on [the plaintiff's] gender in making its decision." Price Waterhouse v. Hopkins, 490 U.S. 228, 251, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989).

The statements allegedly made by Chapman included his opinion that Plaintiff was a "bitch," he "couldn't seem to get a cooperative attitude from her," and that Hazzard and Chapman had "several run-ins" and "butted heads." Plaintiff has pointed to no evidence that Chapman actually relied on Hazzard's gender in making his decision to lay off. The Court finds this one remark, without more, insufficient to suggest that Hazzard was terminated because of her sex or that her gender motivated such action. See Galloway v. Gen. Motors Serv. Parts, 78 F.3d 1164, 1168 (7th Cir. 1996) (noting that the term "bitch" does not "necessarily connote some specific female characteristic, whether true, false, or stereotypical; it does not draw attention to the woman's sexual or material characteristics or to other respects in which women might be thought to be inferior to men in the workplace, or unworthy of equal dignity and respect."); Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1513 (D.C. Cir. 1995) (considering plaintiff's

evaluation by supervisor that she was a "bitch" in conjunction with accompanying commentary that plaintiff was "extremely difficult on secretarial and support staff" to express gender-neutral concerns about plaintiff's interpersonal relations with co-workers, rather than discriminatory considerations); Williams v. KETV TV, Inc., 26 F.3d 1439, 1441 n.2 (8th Cir. 1994) (affirming judgment for employer on sex and race discrimination despite evidence at trial that personnel involved in hiring decision referred to plaintiff as a "black bitch."); Moulds v. Wal-Mart Stores, Inc., 935 F.2d 252, 253-54 n.1, 256-57 (11th Cir. 1991) (affirming judgment for employer on sex and race discrimination despite evidence that employer told plaintiff she would have to be more of a "bitch" to become manager); Bressner v. Caterpillar, Inc., 2008 U.S. Dist. Lexis 9000, 2008 WL 345550 (C.D. Ill. Feb. 7, 2008) (finding that "[n]o jury would find that referring to a woman as a 'bitch,' even a 'fucking bitch,' . . . is evidence of a discriminatory intent.").

Plaintiff originally claimed she was terminated on the basis of her gender due to Michelle Galloway's allegations of Hazzard having affairs and receiving the attention of male employees. Plaintiff fails to address these allegations in her response to Defendants' motions, and the Court finds this contention abandoned.

Accordingly, Navistar's Motion for Summary Judgment [63] is granted as Plaintiff failed to raise a genuine dispute of material fact that Hazzard was terminated because of her gender or her gender motivated her termination.

*Conclusion*

Griffin's Motion to Dismiss [84] is GRANTED, as Plaintiff failed to timely exhaust her administrative remedies against Griffin. Express Services, Inc.,'s Motion for Summary Judgment [65] is GRANTED, as that entity is not considered Plaintiff's "employer" under Title VII pursuant

to the economic realities/common law control test. Navistar Defense, LLC's Motion for Summary Judgment [63] is also GRANTED, as Plaintiff failed to raise a genuine dispute of material fact that she was either terminated because of her gender or that her termination was motivated by her gender.

SO ORDERED, this the 27th day of September, 2012.

/s/ MICHAEL P. MILLS
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**